## R. F. Mitcheson v. William L. Norse.

### Appeals—Practice—Dismissal of Appeal.

Where an appellant procures all of the record and papers in a cause to be copied in a transcript, and files it in the clerk's office of this court before he is required to do so under the statute, such appeal will not be dismissed on motion of the appellee because filed too soon.

### Partition Fences.

Adjoining landowners in maintaining a partition fence are each bound to keep up a lawful fence on their respective portions, and where one owner fails to do so, and his cattle break through and damage the other, such person so failing is liable for such damages if the other owner has maintained his portion of such fence.

### Pleading—Petition.

It is not sufficient to aver in a petition for damages done by trespassing cattle, merely that plaintiff has kept up a good and lawful fence on his portion of a partition fence, but he should aver that he has continuously maintained such fence.

### APPEAL FROM DAVIESS CIRCUIT COURT.

November 14, 1877.

Opinion by Judge Cofer:

The appellant, who was plaintiff in this action, alleged in substance that he and the appellee, who was defendant, were owners of adjoining tracts of land; that the dividing line between them was marked by a ditch; that for a portion of the distance the partition fence between them was on one side of the ditch, and for the residue on the opposite side; "that it was agreed, between those from whom the plaintiff and the defendant acquired title and possession, that those holding plaintiff's land should keep up a good and sufficient fence on his side of the ditch, and those from whom the defendant acquired title should keep up a good and sufficient fence on his side of said ditch, so as to protect their respective crops and produce, and those in possession of plaintiff's and defendant's said lands, and plaintiff and defendant, have continued as aforesaid to use and hold said fence as a division fence between their inclosures, each agreeing

to keep up their respective parts of said fence ;" that the plaintiff had kept up "a good and lawful fence" on his side of the ditch, being more than his proportion of said fence, but the defendant had failed and refused to keep on his portion of the line a good and lawful fence, or any fence at all, in consequence of which stock got upon the plaintiff's premises and destroyed his crop of corn growing on his adjacent land.

A demurrer to the petition was sustained, and the plaintiff has appealed.  The judgment dismissing the petition was rendered June 18, 1877, and an appeal was granted by the court rendering the judgment.  August 1 the appellant filed with the clerk of the circuit court his assignment of errors and schedule of record, to be copied for this court as required by Subsec. "a," Subsec. 4, Sec. 737, Bullitt's Code; and August 13 he filed the record in the office of the clerk of this court, without having given the notice required by Subsec. "b" of the same subsection.

The appellant ordered the entire record to be copied and has filed it here, and the appellee has moved to dismiss the appeal.  Paragraph "b" reads as follows:  "After filing said assignment and schedule (required by subsec. "a") the appellant may cause notice of the filing thereof to be served on the appellee, and to be returned to said office (of the clerk of the inferior court) as a summons is directed to be served and returned, and within twenty days after such service; or if such notice be not served within one hundred twenty days after the granting of the appeal, or, whether such notice be served or not, any time before completion of the transcript ordered by the appellant, and not afterward, the appellee may file in said office a schedule similar to that above described; and if he wish to take a cross-appeal, he shall file with said schedule his assignment of cross-errors."

This provision does not require the appellant to delay for any specified time to file the record in the clerk's office of this court.  The preceding paragraph requires that in a case like this the assignment of errors and schedule shall be filed in the office of the clerk of the court rendering the judgment, within ninety days after the appeal is granted, on pain of a dismissal of his appeal, and Sec. 738 requires him to file the transcript in the office of the clerk of this court at least twenty days before the first day of the second term next after the granting of the appeal, unless the court extend the time, as, for cause, it may do.

The consequence of filing a transcript too early is not declared, and

there is, therefore, no authority to dismiss the appeal for that cause, if it had been made out.

The object of requiring notice and giving time to the appellee to file a schedule was to enable him to have copied any papers not ordered by the appellant which he might deem necessary to a correct determination of the appeal, or on a cross-appeal, if he should desire to prosecute one. When the appellant orders less than the whole record to be copied, and no notice is given to the appellee of the filing of the assignment of errors and schedule, and the transcript is completed by the clerk in less than one hundred twenty days, if the appellee deems other portions of the record necessary to a correct decision of the original appeal, he may have them supplied under certiorari, or, upon laying proper foundation for it by rule on the appellant, have them copied.

But when, as in this case, the entire record is ordered by the appellant, and is filed here, we see no reason and find no provision of the Code requiring the appellant to delay filing the appeal in this court until one hundred twenty, or even until ninety days have elapsed after the appeal is granted. The motion to dismiss the appeal is therefore overruled.

The provisions of the statute respecting partition and division fences are involved in some obscurity. Secs. 1 and 2, Art. 2, Chap. 55, Gen. Stat., provide for the removal of partition fences which have existed or may hereafter exist by agreement or acquiescence. Sec. 3 provides that "Whenever a division fence exists, each party thereto shall be required to keep a lawful fence on his proportion of the line; and in case he neglects or fails to do so, the party so failing shall be liable for all damages the other party may sustain from the trespassing of cattle or other stock over said division fence; and the party sustaining injury may bring his action, and recover the same as is now provided by law in cases of trespass."

Section 4 provides that if any part owner of a division fence shall fail, after reasonable notice, to repair the same, as far as is needful and proper, the other part owner may repair it and recover from the recusant the value of the repairs made. These provisions are contained in Article 2, entitled "Partition Fences." Article 3, entitled "Division Fences" provides:

"Sec. 1. Persons owning adjoining land may agree in regard to the erection of division fences between them, and the keeping of the same in repair; and if the agreement be reduced to writing, and signed by the parties thereto, and acknowledged or proven before the clerk

of the county court of the county where the lands are situated, it may be recorded in the office of said clerk as deeds are recorded, and with the same effect.

"Sec. 2. If the cattle of the one shall pass over or through such division fence, and go upon the lands of the other, at any point at which he is bound to build and keep in repair, he shall be responsible for the damage they may do, unless his fence is a lawful one, but shall not be responsible for damages in case they break through or pass over the fence at any point the other is bound to build and keep in repair, unless it be a lawful fence."

Under Article 3 the part owner of a division fence is only liable for the trespassing of his own stock, and not for that unless he fails to keep on his portion of the line a good and lawful fence, and his stock get over or through at a point where he is bound to build and keep up the fence, or in case the other part owner keeps a lawful fence and the stock get over or through that portion.

The appellant alleged that he had kept "a good and lawful fence" on his portion of the line, and that the appellee had failed to keep such a fence on his portion. But he did not allege that the stock that trespassed was the stock of appellee. His petition did not, therefore, entitle him to recover under Article 3, even conceding it was in other respects sufficient.

Under Article 2, when a division fence exists, whether by agreement or acquiescence, such part owner is bound to keep on his proportion of the line a good and lawful fence, and if he fail, and cattle or other stock trespass over said division fence, whether over his portion or not, he is liable to the other part owner for the damage they may do, provided the other part owner has kept a lawful fence on his portion of the line. But as each is required to keep a lawful fence, neither can recover against the other for the trespassing of stock across the fence unless his part of the fence was a lawful fence at the time of the trespass.

The appellant alleged facts sufficient to show that the fence between his land and the land of the appellee is a partition fence within the meaning of Article 2, and was entitled to recover if he sufficiently alleged that he had at the time of the alleged trespass a good and lawful fence on his portion of the line.

His allegation on this point was as follows: "Plaintiff has kept up a good and lawful and sufficient fence on his side of said ditch, it being more than his proportion of said fence, etc." He did not say when he kept up "a good and lawful fence," or that he did so con-

tinuously.  He may have made his fence a lawful fence since the trespass, and if he did so and has kept it a lawful fence since, his allegation would be true although he may not have had such a fence when the trespass was committed.  We are therefore of the opinion that the demurrer was properly sustained.

The statute prescribes what shall be deemed a lawful fence, and it is doubtful whether the petition is not bad because it contains the statement that the appellant had kept a good and lawful fence, instead of a statement of the facts which showed that the fence was, as matter of law, a lawful fence.  Judgment *affirmed.*

*Williams & Brown, for appellant.*
*Riley, Jolly & Walker, for appellee.*